## J. HENRY BALDWIN v. FOREST B. FISHER and Others.[1]

February 18, 1910.

Nos. 16,200—(40).

**Findings Sustained by Evidence.**

Evidence considered, and held to sustain findings except as to one defendant.

**Plat of Unofficial Survey.**

It was not error to admit in evidence certain plats of unofficial surveys.

**Measure of Damages — Materiality of Evidence.**

Evidence was received which tended to prove pecuniary loss to the plaintiff. In the absence of any judgment therefor, it is immaterial whether or not the evidence received was directed to the proper measure of damages.

**One in Possession May Sue to Restrain Repeated Trespass.**

One in the peaceable possession and occupancy of land may maintain an action to restrain repeated and continuing trespasses of one asserting title in himself.

**Same — Natural Watercourse — Dispute as to Title of Land.**

In an action to prevent interference with a natural watercourse, which the plaintiff has a prescriptive right to maintain across another's land in the condition to which he has improved it, and also to restrain repeated and continuing acts of trespass upon land in the peaceable possession and occupancy of the plaintiff, a bona fide dispute as to the fee to the land will not of itself prevent the court from passing upon the title and granting equitable relief.

---

[1] Reported in 124 N. W. 1094.

---

[Note] As to injunction against repeated trespass, see notes in 13 L.R.A. (N.S.) 173, and 21 L.R.A. (N.S.) 417.

Action in the district court for Stearns county to enjoin defendants from filling up or interfering with a certain ditch, or destroying plaintiff's crops, or breaking down any of his fences, upon certain described premises.

The complaint alleged that from a meadow near the centre of section 35 a natural ravine extended north and emptied into a creek which drained the entire region; that the ravine was the natural and only outlet for all the water on the meadow; that in the distance of three quarters of a mile from the meadow to the creek there is a fall of more than fifty feet; that in the years 1880 and 1881 plaintiff constructed and has since maintained a ditch through the meadow into the channel of the ravine so that there was a free flow of water through such channel into the creek which drained the meadow and abutting lands; that defendants wilfully and repeatedly filled up the channel so as to prevent the flow of water and destroy plaintiff's crops. The prayer of the complaint did not ask for damages. The answer was a general denial, save that it alleged that the proper method of draining the meadow or slough was through a ditch from the east side through the land of plaintiff, and not through defendants' lands as alleged; that in 1904 plaintiff constructed a fence on land of defendant Albert E. Fisher for the sole purpose of preventing Fisher from fishing in the waters of Otter Lake, a public navigable lake. The answer admitted that defendant Fisher cut the wires of the fence for the purpose of obtaining access to Otter Lake for the purpose of fishing. The reply alleged that Otter Lake was not a meandered lake, and that plaintiff was the owner of its bed by conveyances which relinquished all federal and state claims to it.

The case was partially tried before Searle, J., and the trial completed before McClenahan, J., who made findings and ordered permanent injunctions against defendants. From an order denying their motion for a new trial, defendants appealed.

Affirmed as to defendants Albert E. Fisher and James E. Howes, without prejudice to the right of Howes to apply to the district court to be excluded from the operation of the injunction so far as it relates to section 2. Reversed as to Forest B. Fisher and judgment ordered in his favor.

*Stewart & Brower,* for appellants.
*James E. Jenks* and *J. D. Sullivan,* for respondents.

O'BRIEN, J.

This is an action to restrain the defendants, Forest B. Fisher, Albert E. Fisher, and James E. Howes, from trespassing upon certain lands to which the plaintiff claims title, and from obstructing or interfering with a watercourse deepened and improved by the plaintiff.

(a) The plaintiff owns the south half of the northeast quarter of section 35, township 122, range 28. The record is somewhat obscure as to the north half of the quarter, but it is owned either by the defendants, Albert E. Fisher and James E. Howes, or by Albert E. Fisher and Mrs. Howes. The plaintiff claims a natural watercourse extends in a northeasterly direction from a point near the center of the section across the entire quarter to a creek, and that he has a prescriptive right to maintain the watercourse as deepened and improved by a ditch constructed and which drained a meadow upon his land.

(b) Plaintiff claims the defendants obstructed the watercourse and encroached upon his land, plowing up and destroying his crops. The parties do not agree as to the line dividing the north from the south half. The plaintiff claims according to a survey known as the "Jenks survey," made in 1872, and the defendants according to a survey made by Chute in 1898. The result is to leave in dispute a wedge-shaped tract containing between two and three acres, and across which the watercourse and ditch extended.

(c) The third complaint that the plaintiff makes is that the defendants cut and broke a wire fence placed by him upon the line dividing his land from that of the defendant Albert E. Fisher in section 2, township 121, range 28. This fence extended across an arm of Otter Lake, upon which Albert E. Fisher claimed the right to enter for the purpose of fishing and boating. It is now conceded that the lake was not meandered; but it is claimed that the fence was not upon the true line, but was upon Fisher's land.

The trial court, in substance, found that the plaintiff and his grantors had for more than twenty years "been in actual, open, continu-

ous, exclusive, and hostile possession under color of title and claim of ownership," of the south half of the northeast quarter of section 35, according to the Jenks survey. This survey, as we have said, placed the disputed wedge of land in the south half. The court further found that the defendants had at various times gone upon this strip of land, destroyed plaintiff's crops, and still claimed the right to do so; that there was a natural watercourse extending from the slough on section 35 across the northeast quarter and discharging into a natural ravine on the north half of that quarter, and that in 1881 "the plaintiff constructed a ditch through said meadow, and continued it through said natural channel by deepening the same along its course to said natural ravine; * * * that plaintiff maintained said ditch * * * continuously from A. D. 1881 to A. D. 1902," when the defendants obstructed it, causing the overflowing of plaintiff's meadow, rendering it unfit for use.

In reference to the trespass upon section 2 the court found that for more than twenty years plaintiff and his grantors had been the owners and in possession of the land up to the fence already described, and that at divers times the defendant Albert E. Fisher had opened the fence and gone upon the lake, and still claimed the right to do so; that there was no evidence that the other defendants had opened the fence, or threatened to do so. The court also found the diminution in the rental value of the plaintiff's meadow by reason of the overflow, but denied the plaintiff judgment for any amount. Judgment was ordered against all the defendants, forever enjoining them from opening the fence or going upon the part of the lake owned by the plaintiff, from entering upon any portion of the south half of the northeast quarter of section 35, as established by the Jenks survey, and from filling or damming or impeding the ditch from the slough to the ravine.

Upon this appeal from an order denying a new trial the defendants contend: (1) That the findings are not sustained by the evidence; (2) that the findings as to any wrongful act upon the part of the defendant Forest B. Fisher and James E. Howes are not sustained; (3) that the court erred in admitting the Jenks plat in evidence, and (4) in receiving evidence as to the diminution in rental value

of the meadow; and, finally (5) that there was a bona fide controversy as to the correct location of the lines dividing these tracts, thus putting in issue the title to the land in question, which dispute could not be determined in this form of action.

1. The evidence is sufficient to sustain all the findings of fact, with the exception of those which charge the defendant Forest B. Fisher with continuing acts of trespass. The only evidence which we have been able to find, or to which we have been referred, which in any way connects him with the acts complained of, is that given by himself that he had the ditch filled up some time in 1905 or 1906. Since then and before the commencement of this action he appears to have parted with his land, and while it may be true, as claimed in the brief of counsel, that his active sympathies are with his codefendants, there is no evidence that he has continued to or threatens to interfere with plaintiff's rights.

2. The same claim is made for the defendant Howes, but he distinctly admitted taking part in the plowing up of the disputed strip, and, while Albert E. Fisher appears to have been the most active in the commission of the acts found to have been trespasses, the defendant Howes was properly included in the findings.

3. It was not error to admit the Jenks plat in evidence under the circumstances. If it was not sufficient of itself to establish the line as claimed by the plaintiff to be the true original line, it was proper to consider it in connection with the plaintiff's testimony as to his possession of the tract actually occupied and cultivated by him.

4. It was proper for the court to receive evidence that the plaintiff sustained substantial damage from the obstruction of the ditch and consequent overflow of his meadow. The fact that the court held that under the complaint no damages could be awarded the plaintiff makes it entirely immaterial whether the evidence as to the diminution in rental value would establish the proper measure in a case wherein damages could be recovered.

5. This action may be maintained, notwithstanding the dispute as to the boundary lines. There can be no question that prior to the trespass complained of the plaintiff was in the peaceful possession of the land now claimed by one or other of the defendants. It was not

necessary for the court to find the absolute fee title in the plaintiff in order to justify a judgment restraining threatened trespass. The forcible entry into lands is forbidden by section 4036, R. L. 1905, and the defendants had the means of establishing their rights by suitable proceedings, instead of by an entry which, if not forcible, was at least in violation of the spirit of the statute; for the destruction of the plaintiff's crops cannot be said to have been a peaceful act, even if unaccompanied by any actual violence. This is not in conflict with Mercil v. Broulette, 66 Minn. 416, 69 N. W. 218, where it was said that one entitled to possession might, while another is in the occupation, make a peaceable entry upon land and retain the possession so acquired. The facts in that case were materially different from those in the case at bar.

The defendants insist that, as there is a bona fide dispute as to the title to the land, that question cannot be determined in this action, and in support of this position cite, amongst others, the following authorities: Toledo v. St. Louis, 208 Ill. 623, 70 N. E. 715; Parker v. Shannon, 114 Ill. 192, 28 N. E. 1099; Morris v. Fagin, 22 N. J. Eq. 430; Cromwell v. Hughes, 144 Mich. 3, 107 N. W. 323; Beacham v. Wrightsville, 125 Ga. 362, 54 S. E. 157; Curtin v. Stout, 57 W. Va. 271, 50 S. E. 810; Stone v. Snell, 4 Neb. (Unof.) 430, 94 N. W. 525.

Those cases do hold that an equitable action to restrain trespass is not the proper form of action in which to determine title to land, and if there was involved here only the title to land the cases cited would be in point and very convincing; but in this case the right of the plaintiff to have the benefit of the watercourse across the defendants' land as he had deepened and improved it was one, if not the most, important issue involved. This right claimed by the plaintiff in no degree depended upon the title to the land in dispute; but the entry upon and plowing up of the disputed strip was a part of the obstruction of the watercourse. An action in ejectment would not determine plaintiff's right to maintain the watercourse. If for no other reason than to prevent multiplicity of suits, the court below was justified in determining all the issues presented by the pleadings or evidence. The defendants were not deprived of a jury trial, as no

demand was made for the submission to the jury of any issue of fact. The evidence sustains the finding that the plaintiff had for more than twenty years prior to the first interference by any of the defendants maintained upon the north half of the quarter a ditch which deepened the watercourse and improved the meadow on plaintiff's land. This gave the plaintiff a prescriptive right to the continuance of the watercourse as deepened and improved by the ditch. Mueller v. Fruen, 36 Minn. 273, 30 N. W. 886; Kray v. Muggli, 84 Minn. 90, 91, 86 N. W. 882, 54 L. R. A. 473, 87 Am. St. 332; Schulenberg v. Zimmerman, 86 Minn. 70, 90 N. W. 156. It is claimed that the ditch as originally constructed would not drain the slough or improve the meadow to the extent found by the court; but we do not see how this can affect the right of the plaintiff to maintain conditions as they were before interfered with.

Taking, then, the findings of fact as sustained, we have this condition: The plaintiff was lawfully and peacefully in the possession of certain land, and had acquired by prescription the right to maintain a drain or ditch from that land across a contiguous tract. Without any attempt to obtain a judicial determination of their rights, the defendants entered upon the land so occupied by plaintiff, plowed up his crops, and destroyed the ditch, and at other times one of the defendants cut plaintiff's fence and entered upon another portion of his land. There is no doubt that the action could be maintained to prevent interference with the ditch. Munsch v. Stelter, 109 Minn. 403, 124 N. W. 14. Nor is there any doubt that one lawfully and peacefully in the possession of land can maintain an action to restrain continuing and repeated trespasses upon it. Kern v. Field, 68 Minn. 317, 71 N. W. 393, 64 Am. St. 479; Colliton v. Oxborough, 86 Minn. 361, 90 N. W. 793; Sherin v. Brackett, 36 Minn. 152, 30 N. W. 551; Witt v. St. Paul & N. P. Ry. Co., 38 Minn. 122, 35 N. W. 862.

In every case to restrain trespass it is almost inevitable that the title to the land must be more or less in question, and here, as to the land in 35, we have the additional fact that the trespass upon the disputed strip was a part of and in connection with the filling up of the ditch. The cutting of the fence across the lake, while a separate act, is, under the circumstances, additional evidence of the continued

and repeated trespassing upon the plaintiff's lands.   Under the circumstances the court had plenary power to determine all the issues made by the pleadings or litigated without objection upon the trial, and to grant complete relief between the parties to the action.

The order denying a new trial as to Forest B. Fisher is reversed, and judgment in his favor is directed.   The order is affirmed as to the defendants Albert E. Fisher and James E. Howes, without prejudice to the right of the defendant Howes, if so advised, to apply to the district court to be excluded from the operation of the injunction, so far as it relates to section 2.